## Conrow *versus* Schloss.[1]

1. Upon a petition to the Supreme Court alleging that the judge of a lower court refuses to seal a bill of exceptions, a writ of mandamus cannot issue commanding that court to seal a bill of exceptions under Statute of Westminster 2d, Edw. I., cap. 31: a special writ setting forth the circumstances of the case and commanding the judges, if they be true, to affix their seal, is the proper practice.

2. The practice under this writ is not according to the course of pleadings in mandamus; a demurrer will not be allowed but the petitioner may file exceptions to the return to the writ.

3. If the judge, in his return, confess the facts and seal the bill, the exceptions become part of the record: if he deny them the petitioner has his action for a false return.

4. In such proceeding the Supreme Court has nothing to do with the quality of the exceptions. When the record comes up on the writ of error, the court will consider whether the exceptions were duly taken under the rules of the court below.

AN action of assumpsit was brought, September 30th 1864, in the District Court of Philadelphia, by Hiram Schloss and others, trading as Schloss & Brothers, against Thornton Conrow, to recover the price of a quantity of tobacco alleged by the plaintiffs to have been sold by them to the defendant.

There was a verdict for the plaintiffs for $1650, on which judgment was entered: a writ of error was sued out by Conrow, the defendant, to January Term 1867, of the Supreme Court.

On the 11th of January 1867, Conrow, the plaintiff in error, presented a petition to the Supreme Court setting forth that he had sought by said writ to bring before that court certain errors committed by the Honorable George M. Stroud, an associate justice of the District Court of Philadelphia, in the said action which was tried before him on the 12th day of November 1866, by a jury duly impannelled; that Judge Stroud charged the jury as set forth in " Exhibit marked A, and that the petitioner's counsel, before said jury deliberated on said case, and in their presence, excepted to said charge as set forth in Exhibit B," and the said judge noted said exceptions; that, pursuant to the rules of the District Court, the petitioner's counsel presented within ten days after the verdict was rendered, a formal bill of exceptions to Judge Stroud, with the exceptions as made at the time of the trial therein written, and requested Judge Stroud to affix his seal thereto, which he refused to do; that on the 29th day of November 1866, the petitioner's counsel again presented said bill to Judge Stroud and again requested him to affix his seal thereto,

---

[1] I am indebted to the Hon. GEORGE M. STROUD for the preparation of the report of this case.—P. F. S.

[Conrow v. Schloss.]

and he refused so to do ; that the said refusals are to the grievous and manifest injury of the petitioner and against the statute in such case made and provided.

He therefore prayed the Supreme Court " to award a writ conformably to the statute in such case made and provided, directed to the said Honorable George M. Stroud, commanding him to appear at a certain day, either to confess or deny the matters herein set forth, and if he confess the same, to affix his seal to said exceptions."

Exhibits A and B, referred to in the petition, were annexed.

## Exhibit A.

" And the learned judge charged the jury as follows :—

Gentlemen of the jury : A sale took place by the Marshal of the United States, on the 2d of August 1864, of a quantity of prize tobacco, among other things. The plaintiffs in this case, Schloss & Bro., and the defendant, Mr. Conrow, were both present at this sale, and both became purchasers of a part of that tobacco. The plaintiffs bought forty boxes, the defendant bought fifty. The sale appears to have been advertised for some days, and a day appointed, I think, on which the goods were to be exhibited for the inspection of purchasers at that sale at that time ; and the inspection of these goods the defendant and the plaintiffs attended, with many others, and they made an examination of the goods, and had as fair an opportunity, I suppose, as could be (from the account of Captain Young), of knowing what the quality of the article was. On the 26th day of August, the plaintiffs in this case say they sold forty boxes of tobacco, which they had bought on the 2d, to the defendant for $1760—sold it at 40 cents a pound, and that is the aggregate at that price. The claim of the plaintiffs is, therefore, a very common count on its face : it is for goods sold and delivered for a price which was fixed and amount ascertained. They say they are entitled to receive of the defendant that amount with the interest from the time at which they sold, which they claim was on the 26th of that month, August 1864. The first question is, whether there was any sale—whether the plaintiffs did sell this property to the defendant ? The plaintiff has produced a witness here, Mr. Katz, who was his book-keeper, and he says, producing a bill for this very article, so many boxes, designating the whole amount, showing the number of pounds, fixing the price and carrying it out to be this amount, $1760. Mr. Katz says that a copy of that bill he delivered to Mr. Conrow at his store, No. 419 Third street, between Callowhill and Willow ; that he gave this bill to Mr. Conrow himself ; and he says that Mr. Conrow, when he did it, said it was all right. That is the evidence of the sale. You have seen the bill. The goods were sent the next day. *You*

[Conrow *v.* Schloss.]

*know* of what I am now speaking *and confining* myself to the actual sale. If a bill was presented in this way, and the parties to whom it was sent said it was all right, I leave it to you to say there was no difficulty about that fact, whether the property was really sold or not.

He says that after that, on the very next day, he had a conversation with Mr. Conrow; that Mr. Conrow came to the plaintiffs' store, and he asked for Mr. Lazarus Schloss, who is one of the three members of the firm who seems to have attended to this matter of the tobacco business, the plaintiff, as you know, being of entirely different business. He was told he was not in. That Mr. Conrow called again, and left a message that he would be much obliged if Mr. Schloss would let him off as to half, as he had much of the tobacco on hand. *Then* there is evidence all bearing on the same point.

In his cross-examination, he says it was made on Friday, the very day when the tobacco was delivered; that Mr. Conrow then came there to the store—that was Friday. It appears to be the 26th day of August 1864.

And now comes the matter which is to be ascertained here, the great subject of dispute, for though the property was delivered there and though this statement may be taken as clear evidence that there was an agreement to this effect, that it was actually sold, yet the defendant says he has a defence, and his defence is that this tobacco was sold by a sample, and that, being sold by a sample, in point of law that is a warranty that the bulk of the commodity corresponds with the sample. And then he says that the commodity did not accord with the sample at all, but that it was of a very inferior quality; that the sample was of good merchantable tobacco, that there were three plugs of the tobacco exhibited, and the witness in that case says that it was that which was exhibited as a sample, that it was apparently 'sound damaged;' he says it had been, but it was yet merchantable. The defendant says that he bought it by that sample, and that there was not a correspondence in the bulk and sample, and on that he makes his defence, that he is not liable at all; and the evidence, you know, shows by the drayman, that on a certain day (I believe it was the 25th or 26th of August) that he hauled these forty boxes to the defendant's store, and he asked where it was to be placed at the first, and it was put out upon the pavement—that was the direction, and that some dispute arose about it, the parties insisting on the part of the defendant that he was bound to carry it into the store, he refusing to take it from the pavement; he went in and delivered the second load in the same way, and the third, I believe, making three loads of this tobacco, the salesman or some one having the superintendence of the defendant's business insisting upon it that the drayman was obliged to put it in

[Conrow *v.* Schloss.]

the store. He did not do so, and that was the matter of dispute between them; but the defendant couples together the account given by Mr. Peter S. Morris, of what took place with him when sent to the plaintiff's store. Mr. Morris says that he was in the employ of Mr. Conrow, and that he (Conrow) specially told him to go to the store of these parties and to see the tobacco which the plaintiffs had bought at the marshal's sale. He went and he made the inquiry of them for that specific tobacco. He says he inquired for the lot of tobacco which was bought at the marshal's sale; that Mr. Lazarus Schloss, who was the party who purchased this and *seemed* to know about it, was not in; that another member of the firm mentioned that and told him to call on somebody in their employ, Mr. Bailey, I think, a respectable old man, and he, together with Mr. Morris, went and examined the tobacco; Mr. Morris says there were three or four plugs exhibited to him which were said to be a sample, and, as I have just said, he describes those plugs as being apparently right sound tobacco. He speaks particularly of their color, and he speaks of them in other respects as tobacco of a good quality, which he thought was worth 40 cents. I do not know whether he offered it, but the price he asked was 45 cents, and Mr. Morris, having no authority, he says that price of 45 cents being above his limit he could do nothing, and did do nothing, except to go back to the store of the defendant; and I believe the defendant being himself away at that time and continuing away for some seven or eight days, when the defendant came back he, Mr. Morris, made a report to him of what kind of tobacco it was, what price was taken, &c. But he says particularly that he neither had authority to make a contract except as to a limited price, and that he did make no contract; that there was no contract between the parties through his intervention, and he knows that he never made any. Mr. Conrow appears to have come back something like ten days after this, and what took place then, whether Mr. Conrow went himself to the store, as Mr. Katz says, or how it was, we have no evidence from the defendant.

Mr. Katz says, that Mr. Conrow came there himself, he does not speak of having heard any contract between them; but a bill was prepared, according to the instructions he received, and taken to the defendant, and said, by Mr. Conrow, to be all right. That bill is, as I said, the evidence of the contract; now the defendant seems to make up a defence by coupling what took place between Mr. Morris, who made no bargain at all, and what took place afterwards, through Mr. Conrow or somebody else, for he never has said how it was or why the terms which were asked for the tobacco, 45 cents a pound, were abandoned and 40 cents substituted for it; and at a distance, too, of some eight or ten days after Mr. Morris had been sent there, and made no kind of con-

[Conrow *v.* Schloss.]

tract at all, because he had no power to authorize him to do it. The defendant says, that this tobacco was, as I said to you, by the production of a certain kind of sample, warranted to be of that kind; and that not being of that kind, there is no contract here. I call your attention to the fact that there was no conversation, or anything else, that is in evidence here, of what took place at the time the tobacco was actually bought; the evidence is clear that there was no contract at all through Mr. Morris, and that Mr. Conrow was absent for a number of days—I think it is said ten days; that Mr. Katz said that Mr. Conrow came himself, and there is no evidence at all of what passed between Mr. Conrow and the plaintiffs in this case; all you can collect on the subject is, that there must have been a sale, because Mr. Conrow afterwards received a bill which, in effect, declared there was a sale, and that he said it was right; but there is no evidence at all there was any exhibition to him of any plug or plugs or anything of the kind—nothing in the shape of a sample, nothing alleged to be a sample, nor, indeed, that there was anything that took place at the time, as I stated to you. You may find what Mr. Morris said to be so. You may find that he made no contract, and he went away; that ten or twelve days passed; that then there was, if you find it so, a contract, that Katz speaks of, made so at that time.

I have my testimony very carefully written down; there is no mistake about it, he began by saying, this is a copy of a bill. I delivered a copy of it to defendant. He saw it and said it was all right. The tobacco was at Bucknor, McCammon & Co.'s. Had, on the next day, a conversation with Mr. Conrow. Mr. Conrow came to the store and asked if Mr. Lazarus Schloss was in; was told he was not in. Mr. Conrow called again, and then left a message, that he would be much obliged if Mr. Schloss would let him off as to half, as he had much on hand; and this was Friday, the same day when the tobacco was delivered, when Mr. Conrow was at our store.

The only important point of Mr. Katz's testimony is to see whether there was any purchase or not. It makes no difference that he came to the store *and heard him say*. I am not *relating that he did*, but that he presented this bill, and he said it was all right, and that he did come to the store and ask to be let off of one-half of the contract. Now, if that is not evidence of the sale, I do not know what it relates to. I do not know how the sale can be proven any better.

Now there was no sale to Mr. Morris; that is clear enough; he says so.

When was the sale? Who bought it? The defendant ought to know, and the plaintiff has shown this, that the defendant came to him and asked to be let off the contract, and said when the bill

[Conrow v. Schloss.]

was presented to him it was all right. Why don't the defendant show us how the contract was made ?

The next question is, what were the terms of that contract ? Now I say there is no evidence at all that connects the visit of Mr. Morris with the making of this contract after Mr. Conrow came home, which I think was about ten days after that. It is for you to say whether there was a contract of sale, and what were the terms of it. Now I say you cannot connect, from any evidence.that is here, the visit and the conversation between Mr. Morris and the plaintiff in this case, and, as far as I can see (I leave it for you), there is no evidence at all. The price having been entirely changed, 45 cents having been asked and 40 cents taken, it is for you to say whether there was not an entirely new agreement proposed, one in which there was no sample or guaranty of any kind. If you recollect, the article was sold as damaged, known to be damaged prize tobacco, and it is, probably, I submit to you, one of the most *unwarrantable* and unusual things to warrant, an article that is confessedly known to all the parties to be a damaged article. Well, then, gentlemen, if you find there was no warranty of this, then we have but the ordinary case of a bargain and sale of goods, *a purchase and sale of goods*, and at an *ordinary price*, for there is no dispute about that, and it comes to a certain amount; the goods were left with the defendant, who did dispute it; he wanted them to be sent back, but nevertheless I leave it to you to say whether there was a doubt that there was really a sale between the parties. The judge then referred to the letter written at the time of the alleged delivery of the tobacco by the defendants to the plaintiffs; he added that it was for the jury, taking all the evidence in the case, to say whether there had been a sale or otherwise. He then read the letter in question to the jury, and added, no allegation here of broken boxes and nothing else, and nothing said that they never bought this article not square with the contract, or anything said about it. I am not aware, gentlemen, that there is anything more that I have to say to you.

The court affirmed several of the points submitted by the defendant, and refused to affirm others."

### Exhibit " B.'

" And defendant excepted then and there as follows, to wit:

Defendant excepts to the instructions of the honorable judge contained in the following language in his charge :—

1. When the bill was shown, Conrow said it was all right.

2. Conrow had a fair opportunity of knowing what the quality of the article was.

3. If he, Conrow, said it was all right, then there is no difficulty I suppose in saying a sale was made.

5 P. F. SMITH—3

[Conrow *v.* Schloss.]

4. There was clear evidence that it (the tobacco) was delivered. Then of that there can be no doubt, but the defendant says he has a defence.

5. Morris says he made no contract and had no authority to make it.

6. Katz says Conrow came himself and the bill was said by Conrow to be all right.

7. Defendant seeks to make up a defence by coupling what was said to Morris, who made no contract, and what took place ten days afterwards.

8. I call your attention to the fact that there is no evidence at all of what took place when the tobacco was bought, and there is no evidence at all of what passed between Conrow and plaintiff at the time of the sale.

9. There is no evidence at all that there was any exhibition to him of a sample, or anything in the shape of a sample.

10. The defendant ought to know when the sale was made. Why don't defendant show us how the contract was made?

11. There was no evidence at all which connects Mr. Morris with this contract.

12. You (the jury) only take the fact that there was a sale.

13. There is no evidence at all connecting Mr. Morris with the sale.

14. You (the jury) must say if there was not a new bargain.

15. But I leave it to you to say, from the whole evidence, whether there was a sale or not, and what were the terms of it.

16. If there was no exhibition of a sample at the time the sale was made, then we have nothing but an ordinary sale, and an attempt to get out of it.

17. In the letter there is no intimation of such a defence, there is not a word said in the letter that he (Conrow) had a defence.

18. No conversation at the actual sale is given.

19. If there was any warranty, I can't see it at all.

20. There was no allegation with broken boxes before him (Conrow) that it (the tobacco) was bad.

21. Why don't he (Conrow) show what took place then (at time of sale)?

22. He don't show the exhibition of any sample then, nor give any evidence of what took place at that time.

23. There is no evidence connecting this interview of Mr. Morris with any contract. He says he made no contract. You cannot connect this interview from any evidence in the case with the subsequent sale.

24. After the charge, at the suggestion of Mr. Earle, the learned judge turned to his notes and read that, at conversation between Schloss and Conrow, witness, Katz, said he heard Schloss

[Conrow v. Schloss.]

say 5 cents, and Conrow said, I don't want it, and that phono-grapher's note to same effect was also read to the jury.

And defendant further did then and there except as follows, to wit:—

1. Because, in the recapitulation of the evidence, the learned judge gave undue weight and prominence to those portions thereof which bore against defendant; and omitted, or alluded slightingly to, those portions which bore in his favor.

2. Because the charge, as a whole, was calculated to mislead the jury."

The petition and accompanying documents having been received by the court, the following opinion was delivered on the 14th of the same month:—

PER CURIAM.—Thornton Conrow comes before us by a written petition, verified by his oath, setting forth that on the trial of an issue in the District Court of Philadelphia, wherein Schloss & Brothers were plaintiffs and the petitioner was defendant, before the Hon. George M. Stroud, one of the judges of said court, and a jury duly impannelled therein, on the 17th day of November 1866, the said judge charged as set forth in Exhibit A (which accompanied the petition), and that the counsel of the petitioner, before the jury deliberated on their verdict, and in their presence, did except to said charge, as is specifically set forth in Exhibit B (accompanying said petition), and that the said judge did then and there note said exceptions.

The petition further alleges that afterwards, pursuant to the rules of practice in said District Court, his counsel presented a formal bill of exceptions to Judge Stroud, with the exceptions as made at the time of the trial, and requested said judge to affix his seal thereto, which he then and there refused to do. A *second* presentation of the exceptions, and a refusal to seal them, is also set forth in the petition.

The petition concludes with a prayer that a writ be awarded out of this court conformably to the statute in such case made and provided, commanding Judge Stroud to appear at a certain day, either to confess or deny the matters alleged, and if he confess the same, to affix his seal to said exceptions.

The statute here alluded to is that of Westminster 2d (Edw. I., cap. 31), which is the statute which gives bills of exceptions, and which has been extended to this state. In Drexel v. Man, 6 W. & S. 397, it was held that a mandamus could not issue from this court to the District Court of Philadelphia, commanding that court to seal a bill under the Act of Westminster, but that a special writ setting forth the circumstances of the case and commanding the judges, if they be true, to affix their seal to the bill, was the proper practice. And a copy of the appropriate writ, taken from the register, is given in a foot-note to the report of the case.

[Conrow *v.* Schloss.]

It is this writ that the petitioner prays for. It is not a writ of mandamus, for if the judge return that the facts alleged are untrue, we proceed no further, but leave the party to his action for a *false return.* If the judge confess the bill of exceptions, he is bound to seal it, and this duty may be enforced. *If the charge and the exceptions be truly set out in the exhibits,* the PETITIONER IS ENTITLED TO A SEALED BILL, and in awarding the writ, we direct a copy of the exhibits to be served on the judge along with this writ. Let the writ issue, returnable on Saturday next, January 19th 1867, at 10 o'clock A. M.

In pursuance of the order of the Supreme Court, the following writ was issued:—

" City and County of Philadelphia, to wit:

" The Commonwealth of Pennsylvania to Hon. George M. Stroud, greeting:

" Whereas, by statute, among other things, it is provided, that in any suit before the justices, where an exception is taken, if the said justice before whom the same is taken refuse to allow the same, and the party making the exception puts the same in writing, and requires the justice to put his seal thereto, in testimony of the same, if he refuse so to put his seal, it shall be affixed as in said statute is set forth.

" And whereas, one Thornton Conrow has filed his petition before the justices of the Supreme Court of Pennsylvania, complaining that, lately, in a certain suit in the District Court for the city and county of Philadelphia, to September Term, 1864, and No. 536, before you, the said George M. Stroud, between Hiram Schloss, Lazarus Schloss and Simon Schloss, trading as Schloss Brothers, and the said Thornton Conrow, various exceptions were taken and alleged to your charge ; and those exceptions have been put in writing, for that you refuse to allow the same, and have been repeatedly required and prayed to affix your seal to those exceptions, according to the form of the aforesaid statute. Yet so it is, that you have objected and still do object and refuse to affix your seal to the aforesaid exceptions, to the grievous injury and manifest prejudice of the said Thornton Conrow ; and the said Thornton Conrow did pray said justices to provide a remedy for him.

" And because we are desirous that the aforesaid statute be strictly observed, and that justice be done to the said Thornton Conrow in the premises, we command you *that, if so it be,* that, on or before Saturday, the 26th day of January 1867, you affix your seal to the aforesaid exceptions thus had before you in the aforesaid suit, by the aforesaid Thornton Conrow, in writing, according to the form of the statute aforesaid. And herein fail not, under the penalty in such cases impending."

On the day named in the writ, to wit, Saturday, the 26th of

January 1867, Judge Stroud filed with the prothonotary an answer to the petition as a return to the writ, and with his counsel appeared at the bar of the court.

The answer protesting against the truth of the allegations in the petition and not waiving objections to the jurisdiction of the court in the premises set forth.

That the District Court for the city and county of Philadelphia is a court of special jurisdiction, constituted by an Act of the General Assembly, &c., whose powers, authorities and proceedings are to be ascertained and regulated by the true intent and meaning of the said Act of Assembly and the several supplements thereto, and by such other general laws only as are necessarily to be implied as binding upon the judges thereof, in common with the suitors and parties and their attorneys, in proceedings lawfully instituted in said court.

That the statute of Westminster 2, chap. 31, is the only authority whereby a bill of exceptions is matter of right to be required by any person impleaded before the judges of the said District Court, and that by the true intent and meaning of said statute, the pretended bill of exceptions, mentioned in the petition, ought not to have been allowed by the respondent, but, on the contrary, it was and is his duty to refuse to seal the same.

That the statute of Westminster 2, before, and at the time of the settlement of this country by colonists under the charter granted to William Penn, had received a judicial construction, that a bill of exceptions should be taken and allowed only upon some point of law either in admitting or denying evidence, or a challenge, or some matter of law arising upon facts not denied or sufficiently proved, in which either party had been overruled by the court. This proposition was asserted in the argument of Bridgeman v. Holt, Show. Parl. Cas. 120, A. D. 1693, and Sir William Blackstone (3 Com. 372) and Sir Francis Buller (Nisi Prius 310) severally make the same statement on this subject.

The Supreme Court of the United States, in Ex parte Crane, 5 Peters 190, denied the right of a party to a general exception to the charge of the judge presiding at the trial, and required a distinct specification of the point or points of law, in the ruling of which the judge was supposed to have erred. The same court afterwards adopted the following rule of court: "That hereafter the judges of the Circuit and District Courts do not allow any bill of exceptions which shall contain the charges of the court at large to the jury in trials at common law upon any general exception to the whole of such charge; but that the party excepting be required to state distinctly the several matters of law in such charge to which he excepts, and that such matters of law, and those only, be inserted in the bill of exceptions and allowed by the court."

[Conrow *v*. Schloss.]

In at least sixteen of our states express legislation exists, requiring that in bills of exceptions a specification shall be made of the points of law, in the decision of which the inferior tribunals are alleged to have erred. In the remaining states, it is confidently believed that no decision can be adduced contravening the received construction of the statute of Westminster, or any intimation of a practice at variance with its requirements; citing Wadsworth *v*. Sandford, Kirby 456, A. D. 1788; Watson *v*. Watson, 10 Conn. 75; Picket *v*. Allen, Id. 146 (Connecticut). Chancellor Kent, in Van Gorden *v*. Jackson, 5 Johns. 467; Frier *v*. Jackson, 8 Id. 495; Woodworth, J., in Jackson *v*. Caldwell, 1 Cowen 639; and of Chancellor Walworth, in Law *v*. Merrills, 6 Wend. 274 (New York). Coxe *v*. Field, 1 Green 216 (New Jersey).

. Wherever trials by jury and courts of error have a place in the same system of jurisprudence, and the forms of the common law are observed, and a bill of exceptions is the prescribed mode of bringing under revision the proceedings of the inferior tribunal, a specification of the alleged errors has been deemed an essential requirement.

The respondent further submitted that to the generality of this remark· the decisions of our own courts furnish no exception, although in regard to bills of exceptions, &c., a very loose practice has, to a great extent, obtained, as in Thomas *v*. Wright, 9 S. & R. 90; Stewart *v*. Huntingdon Bank, 11 Id. 267; and Munderbach *v*. Lutz, 14 Id. 125.

Mr. Justice Duncan concurred with the construction of the Statute of Westminster, already adverted to, in Thomas *v*. Wright, 9 S. & R. 91, and in Stafford *v*. Walker, 12 Id. 196. In Reigart *v*. Ellmaker, 14 Id. 124, this court pronounced, through Ch. J. Tilghman, an opinion in respect to the construction of the Act of Assembly of the 24th of February 1806, which is equivalent to a full recognition of the principle which the respondent has asserted in refusing to allow the pretended bill of exceptions; that the true meaning of the Act of Assembly mentioned was, that when a judge delivered an opinion on matter of law, he should, if requested, reduce his opinion, with his reasons for it, to writing, and file it of record.

The respondent referred also to the strong expression of his opinion by Chief Justice Gibson in Wolverton *v*. The Commonwealth, 7 S. & R. 278.

· The respondent further set forth that nearly a quarter of a century ago the District Court adopted the following rule of court, which has been in force ever since, to wit, " Either party excepting to the charge of the court to the jury, shall, before the rendition of the verdict, state distinctly the several matters of law in such charge to which he excepts; and no general exception to

[Conrow v. Schloss.]

the whole of the charge shall be allowed by the court, but the exceptions to the matter in law so distinctly stated, and those only, shall be allowed in the bill of exceptions."

The respondent further set forth as follows : " that immediately after the charge had been delivered to the jury in the case of Schloss, Brothers v. Conway, Mr. Earle, one of the defendant's counsel, came in front of the bench, and said he desired to make some exceptions to the charge, and thereupon handed to the respondent a half sheet of cap paper or it may be a whole one, on which were written what purported to be detached expressions of the charge.   Respondent read the same and remarked that he saw nothing in them which could be properly denominated matters of law.

Mr. Earle then took the paper away and some time afterwards— a short time, respondent thinks, but cannot speak with certainty— he returned with another paper on which was written, " defendant excepts, because in the recapitulation of the evidence, the learned judge gave undue weight and prominence to those portions thereof which bore against defendant and omitted or alluded slightly to those portions which bore in his favor.    2. Because the charge, as a whole, was calculated to mislead the jury."

On this paper respondent wrote, at Mr. Earle's request, which was in accordance with respondent's usual practice, " defendant's exceptions, G. M. S."    And the respondent fully admits that in this form the same exceptions were made and may be so taken and regarded.

And the respondent furthermore said, in regard to these alleged and pretended exceptions, that neither of them specifies or states any matter of law or any matter to be rightly contained in a bill of exceptions, receivable in a court of error, but that the same should, according to the course of the common law, have been addressed to the sound discretion of the judges of the District Court, on an application for a new trial—and not otherwise.

And as to the 2d, it amounts to a general exception to the whole charge, which exception is at variance with the common law and forbidden by the rule of court hereinbefore contained and set forth.

And as to the other pretended exceptions, consisting of *twenty-four sentences*, alleged to have been uttered by the respondent in his charge to the jury, respondent says, that whether the same be taken singly or together or in any possible permutation, they exhibit *no matter of law*, and ought not, therefore, to be allowed in the bill of exceptions.    Whether or not such sentences were uttered by the respondent, he is unable to say, but a comparison of the same with the imputed charge contained in Exhibit A shows a want of correspondence between the one and the other.    Nos.

[Conrow *v.* Schloss.]

2, 10, 13, 15, 16, 18, 19, 20 have no counterpart in the charge, while there is a marked discrepancy in all other respects between the two documents. *Nevertheless, that nothing may* stand in the way of your Honors in examining the complaint of the plaintiff in error, respondent is willing and consents that each of the pretended exceptions may be taken as properly alleged. And so in regard to the charge as set forth in Exhibit A, respondent denies that the same in language and form, was ever delivered by him; yet, for the purpose of the present inquiry and for no other purpose whatever, he is willing and consents it may be taken as true in matter and substance.

And the respondent shows and offers to the consideration of your Honors, that inasmuch as a court of error concerns itself with alleged errors in matter of law in the proceedings of inferior tribunals, and not with the general merits of the controversy between the parties as disclosed by the evidence, the rule of court which requires a specification, on the trial, of the matters of law contained in the charge, to which a party excepts, grants to such party every advantage which is called for by a regard to the interest of such party; and that the only difference between the requirement of such a rule and the allowance of a general exception to the charge has reference to the supposed convenience of the excepting party and nothing more. For the rule of court adverted to allows any and every matter of law alleged to have been erroneously stated to the jury to be excepted to; and by a rule of your honorable body, the plaintiff in error is required to make a written specification of the particular errors which he assigns and on which he intends to rely; so that the only difference is whether the party shall make his specification at one time or another.

And the respondent would further present to your Honors' consideration, that of necessity, from the constitution of a court of error, it is imposed upon such court, not unfrequently, to reverse judgments from very small faults in the charge, such as arise from the use of language in its nature imperfect, or the statement of a proposition or principle of law too broadly, and the like; whilst at the same time it is quite obvious that such minute error has very slight or no bearing at all on the merits of the cause, and in all probability has had no influence in producing the verdict: Wolverton *v.* The Commonwealth, 7 S. & R. 277–8. On a motion for a new trial, such a condition of things is usually disregarded: Wakely *v.* Hart, 6 Binn. 316.

On the question of the power of the District Court to make the rule of practice already set forth, respondent submitted, that in the establishing this court, as appears from the preamble of the Act of Assembly of March 30th 1811, a leading motive was to secure a speedy and effectual administration of the law in the

[Conrow v. Schloss.]

trial of causes; and that by § 4 of the same act, the court is empowered and enjoined "to make such regulations of practice as may most facilitate the progress of justice;" and that the District Court has at different times made sundry rules designed to effect an easy and speedy trial of causes, two of which at least have been adjudicated upon by the Supreme Court, the power of the District Court to make such rules sustained, and the exercise thereof approved: Odenheimer v. Stokes, 5 W. & S. 176.

The respondent further submitted, that the allowing of a general exception to the charge, or the requiring of a specification of the errors alleged, is a matter which concerns the practice of the inferior court, and therefore, upon settled principles, cannot be the subject of revision at all by a court of error; and prayed that the petition of said Thornton Conrow be denied.

After the answer had been read by counsel with the respondent, the court adjourned to February 2d 1867, at which time "Meredith, for the respondent, asked the court to give judgment as to the sufficiency of the return;" whereupon D. W. Sellers, for complainant, asked leave to file a demurrer to the return. But the court (Woodward, C. J.) said, "This is not a mandamus writ, and the practice under it must not take the course of the pleadings in such writs. We decline therefore to allow the demurrer, but will allow Mr. Sellers to file exceptions to the return of Judge Stroud on or before Saturday next, the 9th instant."

On the 9th of the same month, Conrow excepted to the return as insufficient, for the following reasons, viz.:—

1. As the said George M. Stroud hath confessed the said petition to be true, he hath not affixed his seal to said bill, and so make return to said writ as thereby commanded.

2. The said George M. Stroud refused to seal said bill because the exceptions were directed to the whole charge, without showing that said exceptions could have been otherwise put.

3. The said George M. Stroud refused to seal said bill because of a rule of the District Court, which can only apply to such a charge as is separable in its character.

4. The said George M. Stroud declines to seal the exception, "because the charge, as a whole, was calculated to mislead the jury," for the reason that the same is at variance with the common law and forbidden by a rule of the District Court, which, so far as the alleged conflict with the law is involved, is exclusively for the court of error, and, so far as the rule of court is involved, is wholly immaterial.

5. That the said George M. Stroud assumes that the sentences of the number 24, which were the subject of exception, exhibit no matter of law, without showing to the court the whole evidence in the case tried, that the court of error may judge if this be so.

6. That the said George M. Stroud assumes that the sentences

of the number 24, which were the subject of exception, exhibit no matter of law, *without showing* to *the court the whole evidence* in the case tried, that the court of error may judge if this be so.

7. The said George M. Stroud does *not state that at the time the said exceptions were made, he informed the counsel that the same would not be thereafter sealed.*

8. The return is a statement of the facts *argumentatively* and with qualification, when the writ required plain, certain and unqualified denial or confession.

*D. W. Sellers*, for the petitioner.—The mandate of the statute and the writ is, that the judge appear and either confess or deny the exceptions taken on the trial. If he confess, he is to affix his seal. The words of the statute are, " If he that alleges the exception *write the same*, the justice *shall* seal."

The respondent has confessed the facts to be so, but does not answer that he has affixed his seal.

In speaking of the twenty-four exceptions, the return is, " that nothing may stand in the way of your Honors in examining the complaint of the plaintiff in error, respondent is *willing and consents* that each of these exceptions may be taken as properly alleged." And, speaking of the general charge, he says, " Respondent denies that the same. in language and form was ever delivered by him; yet, for the purpose of the present inquiry, and for no other purpose whatever, *he is willing and consents* that it may be taken as true *in matter and substance.*"

As to the other exceptions, it is submitted, that if a judge *mislead* a jury by *the whole charge*, it is error in Pennsylvania. " If, *as a whole*, the charge was calculated to mislead the jury, it is error :" Reeves *v.* Railroad, 6 Casey 460 ; Bovard *v.* Christy, 2 Harris 267 ; Nieman *v.* Ward, 1 W. & S. 68 ; Armstrong *v.* Hussey, 12 S. & R. 315.

A review of the authorities cited by respondent will confirm this line of argument.

Bridgman *v.* Holt, Show. Parl. Cas. 111, " The writ recites a surmise of an exception taken and overruled, and it follows, *vobis præcipimus, quod si ita est tunc sigilla vestra apponatis. Si ita* is conditional. If the bill be true and duly rendered, then this writ. And it be returned *quod non ita est*, then an order for a false return. And thereupon the surmise will be tried."

As to the rule of the District Court relied upon on the answer, it is submitted that it is beyond the power of that court, if meant to apply to a charge which cannot be separated into parts without doing injustice to the whole.

*G. W. Biddle* and *Meredith.*—Nothing can be more plain on the reason of the statute, than that the exceptions spoken of meant

exceptions as to *matters of law*. A court of error looks at these, and these only. It would be needless to cite authorities to this effect. Our own books, and those of our sister states, abound with them. The greatest precision is required in the English courts in the mode of taking exceptions on a trial. It may not be amiss to refer to a single reported case, Bains *v.* Whitehaven, 3 Clark's Appeal Cases 16. The opinion, which was unanimous, was delivered by Lord Brougham. His language is: "It is necessary that when a party excepts to the reception of evidence, to the rejection of evidence, or to the direction of the judge given to the jury—whatever is the subject-matter of his exception, he must state the ground of his exception, otherwise he cannot except. It is not enough for him to say, I except to the receiving of A.'s evidence, or, I except to the rejection of A.'s evidence, or I except to the *first passage* in the direction given by the learned judge to the jury. If he objects to the reception of A.'s evidence, he must show why it should not be received, as, by stating that A. was incompetent, &c. If he objects to the learned judge's direction to the jury, he must state, not merely that he does object, but the ground on which he objects. In all these cases, the ground of objection must be clearly stated, and beyond the grounds of objection thus stated, the court is not at all bound to look." And this is nothing more than was said by Chief Justice Gibson (Wolverton *v.* The Commonwealth, 7 S. & R. 278), as mentioned in the answer before us.

The opinion of the court was delivered, February 16th 1867, by WOODWARD, C. J.—The writ awarded in the above case, after reciting the material facts alleged under oath by the petitioner, commanded Judge Stroud, *if so it be*, that he should, on a day certain, affix his seal to the exceptions alleged by the petitioner, according to the form of the statute.

This was the whole exigency of the writ. It was framed upon the statute of Westminster 2d, which was the statute referred to, and neither the statute nor the writ required more of the judge than that he confess and seal the exceptions or deny them. If he confessed and sealed them, they became part of the record, and the party would have his writ of error to remove them, with the record, into this court for review. If he denied them, the petitioner would have his action at law for a false return.

The judge was not called on to show cause why he should not seal the exceptions, and we had nothing to do in this proceeding with the quality of the exceptions, and hence the voluminous argument introduced into the return, to prove that the petition was not entitled to the exceptions, was utterly irrelevant. When the record comes up upon a writ of error will be the time for us to consider whether the exceptions were duly taken under the

[Conrow *v.* Schloss.]

rules of the District Court, and whether they are sufficient in law, and we are not to be precipitated into a premature consideration of these points. The statute that gives the writ imposes no such duty upon us at present.

On the ground that the return was argumentative and uncertain, we allowed exceptions to be filed to it, and these brought out the fact that, notwithstanding the protestations and qualifications of the return, it did, in reality, amount to a confession of the exceptions, and the judge accompanied it with an explicit and repeated oral declaration, in the presence of this court, of his willingness to seal the bills if we should be of opinion that he ought to do so.

Seeing that it is now admitted on all hands that the return confesses the bills as alleged, we of course think the judge ought to sign them. And in saying so, we found ourselves entirely on the confession, and not upon the nature or legal effects of the bills. When we issued the writ, we said this would be his duty, in the event of a confession, and that we stated the practice correctly, is shown by all the cases cited by counsel. The whole law of the writ was condensed into a few words in the case of Bridgman *v.* Holt, Show. Parl. Cas. 111, where, after giving the substance of the writ in Latin, it is said, " *Si ita* is conditional ; if the bill be true, and duly rendered, then this writ ; and if it be returned *quod non ita est*, then an action for a false return, and thereupon the surmise will be tried, and if found to be so, damages, and upon such a recovery a peremptory writ commanding the same."

The writ we issued was preliminary and alternative. The return is *quod ita est*. Judge Stroud's offer to seal the bills may therefore be accepted as the legitimate fruit of the writ, and as obviating the necessity for any further process.

Let the bills be sealed, and further proceedings stayed.

Judge Strong was at Nisi Prius when the petition was presented and the writ awarded, but was absent when the final decision was made. Judge Agnew was present when the petition was presented and writ awarded, and heard the cause, but was absent at Nisi Prius when it was determined, and took no part in its final disposition.

The bills having been sealed, and the writ returned, the case was heard January 13th 1868, before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. ; STRONG, J., being at Nisi Prius.

*R. P. White* argued for the plaintiff in error, and

*G. A. Remak*, for the defendants in error.

The court being divided in opinion, the judgment was affirmed January 20th 1868.