## Commonwealth *v.* Craig, Appellant.

*Criminal law—Quashing indictment—Bias of grant juror—Challenge.*

While a grand juror may be challenged for cause, it is not the law that what might have been ground of challenge as to a particular grand juror is, under all the circumstances, ground for quashing the indictment.

When an objection to a grand juror was known, or might have been known by the exercise of reasonable diligence, and might have been interposed by challenge, but was not, it is clear, both upon principle and authority that a refusal to quash the indictment for the same cause is not reversible error.

*Criminal law—Practice, Q. S.—Motion in arrest of judgment—Deposition—Record.*

Depositions taken in support of a motion to arrest the judgment are not a part of the record, and cannot be considered by the appellate court.

*Criminal law—Practice, Q. S.*

In the absence of a plain abuse of discretion, the appellate court will not review the action of the court of quarter sessions in refusing to postpone a trial and in refusing an application for an attachment for an absent witness.

Where, on a motion to quash the indictment on the ground of a bias of a grand juror, leave is granted to the defendants to call witnesses, and they proceed to do so without suggesting that they are not prepared, and after they have examined the grand juror, they ask for an attachment for an absent witness who lived in another county, and the court refuses to suspend the hearing, the action of the court is not ground for reversing a conviction.

*Criminal law—Evidence—Testimony of an accomplice.*

A jury may believe an uncorroborated accomplice, and if his testimony produces in their minds a conviction of the defendant's guilt, beyond a reasonable doubt, they may convict. If the testimony of the accomplice his manner of testifying, his appearance upon the witness stand, impress a jury with the truth of his statement, there is no inflexible rule of law which prevents a conviction. In such case it is for the trial judge who also heard

the witness, noticed his manner and appearance upon the stand and who can judge equally with the jury as to his credibility, to say whether he is satisfied with the verdict.

*Appeals—Harmless error—Evidence.*

An appellant must not only establish the existence of an error in the proceedings below, but that the error tended to his injury. It is not sufficient, as a general rule, to show that an improper question either in form or substance had been put to a witness; it must appear that an answer is received which tended to injure the case of the appellant.

*Criminal law—Larceny—Evidence.*

An information on which a warrant for larceny is based is not admissible at the trial, either on the part of the commonwealth or the defendant, as primary evidence of the date of the larceny.

*Evidence—Contradiction of witness—Relevancy.*

In order to impeach a witness by proof of contradictory statements made by him, it is essential that such statements have reference to some matter which is relevant and material to the issue on trial.

Where a party defendant in testifying against codefendants, denies, on cross-examination that he was biased or interested, a mere offer to prove that he had stated that he was to be " left out at court," is insufficient without a further offer to show by whom the promise was made, or that his being "left out at court," was in any way dependent upon the conviction of the other defendants or the testimony that he might give against them.

*Evidence—Witness—Cross-examination.*

It is legitimate cross-examination of an ordinary witness who has testified in chief, that what purports to be his signature was not written by him to call upon him to write, in order that such writing may be compared with the disputed writing, for the purpose of contradicting him. The same is true of a defendant in a criminal case who has offered himself as a witness. By consenting to take the stand he waived his constitutional privilege.

*Practice, Q. S.—Record—Verdict—Presence of defendants.*

It is not imperatively necessary that the record of the trial in an indictment for larceny should show that the defendants were present when the verdict was rendered,

Argued Oct. 28, 1901. Appeal, No. 20, March T., 1902, by defendant, from judgment of Q. S. Cumberland Co., Sept. T., 1901, No. 27, on verdict of guilty in case of Commonwealth v. Harper Craig, Charles Butler, Jack Battles and Samuel Nicholson of whom Harper Craig and Charles Butler are appellants. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Indictment for larceny.　Before BIDDLE, P. J.

From the record the evidence tended to show that the defendants on January 12 or 13, 1900, stole twenty-five chickens from the farm of James McCullough.

The defendants moved to quash the indictment, filing the following reasons therefor:

1. Because one of the members of the grand jury who found the bill was disqualified, to wit: Horace Barner, for the reason that he had, before the meeting of the court, and after he had been summoned as a grand juror, been actively engaged in assisting the prosecution of the defendants by aiding and securing evidence for the commonwealth, and was a member of an association organized for that purpose.

2. Because, before the meeting of the grand jury he had contributed time, effort and money to employ detectives and attorneys in the effort to secure the indictment and conviction of the defendant.

3. Because, before the meeting of the grand jury he had frequent conferences with detectives, witnesses and members of the association with which he is connected, as aforesaid; was the secretary of said association, received reports from said detectives, and was the custodian thereof.

After a hearing had been begun on the motion to quash the indictment the following statement was made to the court by counsel for the defendants:

I present to the court the subpœna and proof of service of same upon Mr. Roat, the detective, requiring him to be present in court this morning to support the averments made in the motion to quash and represent to the court that he is an important witness; that he lives at Harrisburg, eighteen miles distant; that he will show to the court that his agents were employed to furnish information to the association, of which Mr. Barner, a grand juror, is secretary; that it was furnished; that written reports were sent to him, and this for the purpose of showing that Mr. Barner was disqualified to sit as a juror, and that this information was gathered for the purpose of being used at the present trial.

Mr. Beltzhoover: This offer is objected to because Mr. Roat last evening was examined by the district attorney and associate counsel in the presence of Mr. Barner, and he admitted

there that he probably did not send any written reports and that he probably had them at home; that he had no knowledge about the case of any kind of a personal character, and never did know anything about the case except what had been told him by Mr. Naugle and Mr. Smith, to persons whose whereabouts he did not then know. Mr. Barner, in the presence of Mr. Roat, said he had never gotten any written reports of any kind, and Mr. Roat did not insist that he had ever sent them, but admitted that he must have forgotten to send them or they must have miscarried.

Lastly, that both admitted that they never had in any way communicated anything of any kind to the district attorney or the commonwealth.

Judge Sadler: It is understood that these applications are made in the four cases pending.

The Court: We have just listened to a full examination of Horace Barner in relation to the matters averred in the motion to quash, and after careful consideration are of the opinion that we would not be justified in delaying the trial of these cases until Mr. Roat, who does not live in this county, can be brought here. The motions to quash are overruled and an exception noted for defendants in each case. [3, 4]

When William Fickes, a witness for the commonwealth, was on the stand, the following question was asked:

"Q. Do you know Harper Craig? A. Yes, sir. Q. Have you bought chickens from him?"

Judge Sadler: Objected to. What is the purpose?

Mr. Beltzhoover: The purpose of the question is to show that in January, 1900, he bought two bags of chickens from Harper Craig early on a Monday morning.

Judge Sadler: The objection is that it don't propose in any way to identify the chickens as to their character, identity, amount, nor as to the time. It might relate, therefore to sales of other chickens which were perfectly legitimate. It is incompetent and irrelevant.

The Court: We think the testimony should be admitted. The objection is overruled and an exception noted for defendant. [6]

Mr. Beltzhoover: "Q. Did you buy chickens from Harper

Craig in January, 1900?  A. I cannot give you the date. Q. Did you buy chickens from him?"

Objected to.

"Q. What is your recollection about the time it was?"

Objected to.

"Q. What is your best recollection, if you have any, in regard to that?  A. My best recollection is that I bought chickens from him the last year he lived on the farm, but as to the exact month or date I can't give it to you for I have no record, and I kept no record.  Q. Have you any recollection as to the amount of chickens?  A. Indeed I have not; no, sir, I could not say.  Q. Have you no recollection as to the time of year it was?  A. Well, no, I can hardly fix the time of year.  Q. Do your books show?  A. No, sir, I kept no record of the stuff we bought in on that line.  Q. Can't you tell us about the month or year?  A. Indeed I could not fix the time at all. Q. Didn't you tell me that to the best of your recollection it was a certain time?"

Objected to.

"Q. Have you any recollection of having said to me when you believed it occurred?  A. To the best of my recollection it might have been in the fall or spring of 1899 or 1900, before the barn was burned, but how long before I can't tell you. Q. Did you tell me about how long before the barn was burned?  A. I could not fix the time before the barn was burned.  Q. Didn't you tell me how long before it was burned?  A. I may have said it might have been."

Judge Sadler: The commonwealth in this case having failed to show in chief the exact date in January on which the larceny was committed, the information in the case is offered, which states that it was on January 12 or 13, 1900, for the purpose of aiding the jury in determining when the larceny was actually committed, that matter having been left in doubt by the commonwealth's testimony.

Mr. Beltzhoover: Objected to, first, that the information is an ex parte statement by an officer of the law, Mr. Housholder, who does not appear to have any personal knowledge of the facts, and must have sworn from information and belief. This paper cannot therefore be evidence of anything.  Second. The best evidence of what Mr. Housholder can swear to of his own

knowledge would be himself; he is sitting here, and the gentleman can call him and ascertain, if he can tell, when this larceny was committed.    Third.  The evidence is incompetent and irrelevant for the purpose offered.

The Court: We consider the proposed evidence to be inadmissible.  The objections are sustained and an exception noted for the defendant. [7]

The writing offered was as follows:

" Cumberland County, ss :
The Commonwealth of Pennsylvania.

" Before me, the subscriber, one of the justices of the peace in and for said Cumberland County, personally came Frank Housholder, Constable of the Borough of Newville, who, upon his solemn oath, according to law, deposeth and saith, that on the 12th or 13th day of January, A. D. 1900, Harper Craig, Charles Butler, Jack Battles and Samuel Nicholson did feloniously steal, take and carry away from the residence and farm of James McCullough, in said county, about twenty chickens of the value of ten dollars.  Your deponent desires that the said Harper Craig, Charles Butler, Jack Battles and Samuel Nicholson be arrested and dealt with according to law, and further the deponent saith not.

" FRANK HOUSHOLDER,
" Constable.

" Sworn and subscribed before me the 18th day of June, A. D. 1901.

" A. F. WEAVER,
" Justice."

When Fillmore Washington, was on the stand the following offer was made :

Mr. Wetzel : Samuel Nicholson, one of the defendants and an accomplice with the other defendants who plead not guilty, when upon the stand was asked whether, upon the day that Martin Fry was hanged, he did not say, in the presence of Henry Jones and Fillmore Washington, that he ought not to be here; that he had been promised to be left out at court; that he believed they were going back on him; he had a large family to support and ought to be at home at work for them, which conversation the said Nicholson denied.  Nicholson also

denied that he had been promised any reward for his confession in the case. This testimony is therefore offered for the purpose of contradicting the statements made by Nicholson when upon the stand and to show bias and interest in it.

Mr. Beltzhoover: Objected to, first, that the alleged conversation with Nicholson was whether he had said, in the presence of Washington and others, that he ought to be out; that he had been promised to be out and they were going back on him. They do not propose to show by whom he had been promised anything, or by whom he had been promised his discharge from jail, and therefore any such promise would be irrelevant and ineffective in any way as evidence for the defense. Second. The witness's testimony not having been relevant directly the gentlemen were concluded by his answers and cannot contradict him. Third. The evidence is incompetent, irrelevant and improper.

The Court: The objections are sustained and an exception noted for defendants. [8]

Mr. Wetzel: It is proposed to ask the witness, Henry Jones whether or not he was present at a conversation in which Samuel Nicholson remarked in reference to these chicken cases in Shippensburg that he ought not to be there, that he had been promised to be left out at court, that he had a large family to support and ought to be out working for them, and other matters of a similar character. This for the purpose of showing, first, bias and interest in this case, and secondly, to contradict the witness and affect his credibility before the jury.

Mr. Beltzhoover: Objected to, first, that the inquiry made of Samuel Nicholson was of such a character that the testimony elicited was incompetent and irrelevant, and therefore the gentlemen cannot contradict him ; they were concluded by his answers. Second, it is not pretended that Nicholson said he was promised immunity or discharge from prison by anyone authorised to so promise him. Any admission or statement therefore of Nicholson that he had been promised by some irresponsible person would be incompetent to affect the case in any way, because it could not in any way avail Mr. Nicholson. Third, the gentlemen are bound by Mr. Nicholson's answers, and the testimony is incompetent and irrelevant.

The Court: The matter on which it is proposed to contradict

Mr. Nicholson is one plainly not material or relevant to the issue, and it is therefore not admissible. The objections are sustained and an exception noted for defendants. [9]

Charles Butler, one of the defendants, to write his name at the instance of the commonwealth for the avowed purpose of using it for his incrimination. The request, objection and ruling of the court being as follows :

When Charles Butler was on the stand he was asked this question :

Mr. Kramer : " Q. I will ask you to write your name on this piece of paper (handing witness pen and piece of paper).

Mr. Wetzel : Objected to, that the witness need not write his own name, and the proposed writing is inadmissible.

The Court : The objection is overruled and an exception noted for defendants.

Witness writes his name twice on piece of paper. [10]

Defendant presented this point :

1. There being no testimony in the case to identify or connect defendants, Butler and Craig, with the offense, except that of Nicholson and Battles, self-confessed accomplices, their testimony standing without corroboration in a single fact connecting the defendants, Butler and Craig, with the offense charged, the court should charge and advise the jury to acquit the said defendants. *Answer :* This point is refused. [5]

Verdict of guilty upon which judgment of sentence was passed. Defendants appealed.

*Errors assigned* were (1–4, 6–10) rulings as above. (11) in taking the verdict in the absence of defendants and their counsel.

*E. J. McCune, G. Frank Wetzel, J. W. Wetzel* and *Sadler & Sadler,* for appellants.—No one should be permitted to serve as a grand juror unless he is a good and lawful man, who will impartially and faithfully perform his duties as a grand juror : Reg. v. Upton St. Leonard's, 10 Q. B. 827 ; Com. v. Clark, 2 Browne, 323 ; In re Plymouth Borough Case, 167 Pa. 612 ; Respublica v. Richards, 1 Yeates, 480 ; Com. v. Moore, 143 Mass. 136 ; 9 N. E. Repr. 25 ; Com. v. Eagan, 4 Gray, 18.

The cases making the grand jurors incompetent are confined

to what occurred in the secrecy of the grand jury room, or where it is intended to directly impeach their own finding. But this rule does not make them incompetent as to everything occurring while under their oath: Com. v. Green, 126 Pa. 531; Gordon v. Com., 92 Pa. 216; Com. v. McComb, 157 Pa. 611; Huidekoper v. Cotton, 3 Watts, 56; Com. v. Kulp, 5 Pa. Dist. Rep. 468.

Ordinarily, of course, objections on the ground of disqualification should be taken before the jury is sworn, but this rule cannot apply where the cause of disqualification was not known to the defendant until after the indictment was found: U. S. v. Gale, 109 U. S. 65; 3 Sup. Ct. Rep. 1; State v. Griffice, 74 N. C. 316; U. S. v. Blodgett, 30 Fed. Cas. No. 18312; In re Plymouth Borough Case, 167 Pa. 612; Irvine v. M. & M. Bank, 1 Pittsburg, 422.

In Pennsylvania a continuance for the absence of a material witness will be granted in criminal as well as civil cases: King v. Rapp, 1 Dall. 9; White v. Lynch, 2 Dall. 183.

Though ordinarily the appellate court will not interfere with the action of the court below in such a matter, yet it will if it violates the rights of the accused: Schrimpton v. Bertolet, 155 Pa. 638; Woods v. Young, 1 Cranch, C. C. 346; Burlington Ins. Co. v. Coffman, 35 S. W. Repr. 406.

The jury should have been advised in accordance with the uniform practice of the court not to convict unless the testimony of the accomplices was corroborated in a material matter: Rex. v. Dawber, 3 Stark. 34; Regina v. Dyke, 8 C. & P. 261; Rex v. Wilkes, 7 C. & P. 272; Reg. v. Stubbs, 25 L. J. M. C. 16; Carroll v. Com., 84 Pa. 107; Donnelly v. Com., 6 W. N. C. 104; People v. Whipple, 9 Cowen, 708.

It was error not to admit the information: Rice v. Com., 102 Pa. 411; Jacoby v. North British & Mercantile Ins. Co. 10 Pa. Superior Ct. 366.

A witness's answers as to motives are not open to the criticism that the matter to be contradicted is collateral. Hence, a witness may be asked if he has strong interest in the case, and, if he denies such interest, he may be contradicted by evidence of his own statements, or of other implicatory acts: Wharton's Cr. Ev. sec. 485; People v. Austin, 1 Parker Crim. Rep. 154; Gaines v. Com., 50 Pa. 319; Com. v. Wright, 7 York Legal

Record, 62; Staser v. Hogan, 120 Ind. 207; 22 N. E. Repr. 990; Johnson v. Wiley, 74 Ind. 233; Starks v. People, 5 Denio, 108; Snelling's Will, 136 N. Y. 515; 32 N. E. Repr. 1006; Geary v. People, 22 Mich. 220; Hamilton v. People, 29 Mich. 173; Helwig v. Lascowski, 82 Mich. 619; 46 N. W. Repr. 1033; Tolbert v. Burke, 89 Mich. 132; 50 N. W. Repr. 803; Day v. Stickney, 14 Allen, 255.

A party by taking the stand as a witness, while he may subject himself to the rules applicable to other witnesses, is not thereby deprived of his rights as a party: People v. Brown, 72 N. Y. 571; People v. Mead, 50 Mich. 228; 15 N. W. Repr. 95; State v. Lurch, 12 Oregon, 99; 6 Pac. Repr. 408.

The common-law rule requires that in the case of a trial for a felony, that the defendant should be given the opportunity of personally observing the taking of the verdict: Dunn v. Com., 6 Pa. 384; Dougherty v. Com., 69 Pa. 286; Prine v. Com., 18 Pa. 103; Holmes v. Com., 25 Pa. 221; Lynch v. Com., 88 Pa. 189; Weaver v. State, 24 Ohio, 584.

*W. A. Kramer* and *F. E. Beltzhoover*, for appellee.—The granting or refusing a new trial for all causes which may be assigned, including misconduct of jurors, disqualification of jurors, etc., is within the sound discretion of the trial judge: Howser v. Com., 51 Pa. 332; McManus v. Com., 91 Pa. 57; Gray v. Com., 101 Pa. 380; McClain v. Com., 110 Pa. 263; Com. v. Eberle, 3 S. & R. 9; Com. v. Hazlett, 16 Pa. Superior Ct. 534; Com. v. Gross, 1 Ashmead, 281.

It is no ground of challenge to a grand juror that he had previously expressed an opinion as to the guilt of the party under prosecution.

The fact that persons belong to an association to detect crime does not raise the presumption that they are prejudiced against a party charged with a criminal offense so as to disqualify them from serving as grand jurors: Musick v. People, 40 Ill. 268; Com. v. Woodward, 157 Mass. 516; 32 N. E. Repr. 939; State v. Rickey, 10 N. J. L. 83; Koch v. State, 32 Ohio, 353; Roeland v. Com., 82 Pa. 306; Zeigler v. Com., 22 W. N. C. 111.

Although the uncorroborated testimony of an accomplice should be received with caution, yet there is no rule of law

forbidding a conviction upon his evidence alone: Steinham v.
U. S., 2 Paine, 168; State v. Wolcott, 21 Conn. 272; State v.
Stebbins, 29 Conn. 463; State v. Williamson, 42 Conn. 261;
Earle v. People, 73 Ill. 329; Friedberg v. People, 102 Ill. 160;
Rider v. People, 110 Ill. 11; Nevill v. State, 60 Ind. 308;
Johnson v. State, 65 Ind. 269; Ayers v. State, 88 Ind. 275;
State v. Cunningham, 31 Me. 355; People v. Gallagher, 75
Mich. 512; 42 N. W. Repr. 1063; People v. Doyle, 21 N. Y.
578; People v. Costello, 1 Denio, 83; Stape v. People, 21 Hun,
399; Allen v. State, 10 Ohio St. 289; State v. Dana, 59 Ver-
mont, 614; 10 Atl. Repr. 727; Woods v. Com., 86 Virginia,
929; 11 S. E. Repr. 798; Porath v. State, 90 Wis. 527; 63
N. W. Repr. 1061.

Whether corroborated or not the testimony should be sub-
mitted to the jury: State v. Stebbins, 29 Conn. 463; Linsday
v. People, 63 N. Y. 143; Collins v. State, 98 Ill. 584; People
v. Hare, 57 Michigan, 505; 24 N. W. Repr. 843.

It is not sufficient to show that an improper question, either
in form or substance, has been put to a witness. It must ap-
pear that an answer was received which tended to injure the
cause of the appellant: Com. v. Kay, 14 Pa. Superior Ct.
377.

The court below did not err in rejecting the offer of the in-
formation made in the case and on which the warrant was is-
sued: Lilly v. Kitzmiller, 1 Yeates, 28; Clutch v. Clutch, 1 N.
J. Eq. 474; Patterson v. Maryland Ins. Co., 3 H. & J. 71;
Pittsburg's App., 79 Pa. 317; Lummis v. Stratton, 2 N. J. L.
245; Armstrong v. Boylan, 4 N. J. L. 76; Huidekoper v.
Cotton, 3 Watts, 55; Com. v. Major, 198 Pa. 290.

An offer of evidence should aver with reasonable distinctness
and certainty the facts sought to be proved. Without this
the appellate court cannot say that the rejection caused any
injury: Sweetzer v. Atterbury, 100 Pa. 18; Piper v. White,
56 Pa. 90; Hill v. Truby, 117 Pa. 320; Evans v. Evans,
155 Pa. 572; Smith v. Arsenal Bank, 104 Pa. 518; Riddle v.
Stewart, 4 Penny. 113.

The court did not err in requiring Charles Butler, one of
the defendants who went on the stand as a witness in his own
behalf, to write his name on a piece of paper for the purpose
of comparison with his signature in the hotel register while

he was being cross-examined: United States v. Mullaney, 32 Fed. Repr. 370; Bradford v. People, 43 Pac. Repr. 1013; Com. v. Cowan, 4 Pa. Superior Ct. 579; Com. v. Fitzpatrick, 1 Pa. Superior Ct. 518; People v. Conroy, 153 N. Y. 174; 47 N. E. Repr. 258; People v. Webster, 139 N. Y. 83; 34 N. E. Repr. 730; Tice v. People, 131 N. Y. 651; 30 N. E. Repr. 494.

By taking the stand the defendant completely waives his constitutional privilege and may be cross-examined concerning any matter pertinent to the issue on trial regardless of the extent of the direct examination: Com. v. Morgan, 107 Mass. 205; Com. v. Tolliver, 119 Mass. 315; Com. v. Reynolds, 122 Mass. 454; Slate v. Wentworth, 65 Maine 240; Connors v. People, 50 N. Y. 240; State v. Ober, 52 N. H. 459.

In the trial of felonies not capital it need not appear from the record that the prisoner was present when the jury rendered their verdict; Holmes v. Com., 25 Pa. 221; Prine v. Com., 18 Pa. 103; Stahl's App., 1 Pa. Superior Ct. 496.

OPINION BY RICE, P. J., January 21, 1902:

1. This prosecution was commenced in June, 1901. The indictment was returned a true bill on September 10, and on the following day the defendants made a motion to quash the indictment based on the ex parte affidavit of Craig. He alleged certain facts tending to show that Samuel Barner, one of the grand jurors, was disqualified by reason of bias, also that " he had no knowledge of the same " until the day the affidavit was made. But he did not allege, nor was there any evidence given on the hearing of the motion, that the defendants had made any investigation as to the qualifications of the grand jurors before the day of their meeting, or that they had not had opportunity to do so. Nor is it apparent that the facts could not have been learned by reasonable diligence. All that the court had before it relative to the defendants, prior knowledge of the objection to the grand juror, and their diligence in raising it, was the allegation above referred to of the affidavit. This ex parte affidavit had served its purpose when it was received by the court as ground for entertaining the motion; the court was not bound to treat any of its allegations as verity in the disposition of the motion. Therefore, the only evidence

before the court below upon the motion to quash, and the only
evidence properly before us for consideration in that connection,
is the testimony of the grand juror himself. This fails to es-
tablish the more serious allegations contained in the affidavit.
In reviewing its action in overruling the motion, much weight
is to be given to the judgment of the court below in whose
presence the grand juror appeared and by whom his manner
and conduct as well as his language were scrutinized. Noth-
ing short of palpable error in its decision would justify a
reversal of it. Moreover, it is well settled that a grand juror
may be challenged for cause, but it is not the law that what might
have been ground of challenge as to a particular grand juror is,
under all circumstances, ground for quashing the indictment.
When the objection to the grand juror was known, or might
have been known by the exercise of reasonable diligence, and
might have been interposed by challenge, but was not, we think
it clear, both upon principle and authority, that a refusal to
quash the indictment for the same cause is not reversible error.
In Rolland v. Commonwealth, 82 Pa. 306, 322, the objection to
the two grand jurors was as serious as that disclosed by the
testimony of the grand juror in this case, but the court held,
that while it might have been a ground of challenge, it was not
ground for quashing the indictment.

2. The assignment that the court erred in refusing to arrest
the judgment must be overruled for the obvious reason that
no ground for the arrest appears of record. The depositions
taken in support of the motion are not part of the record:
Alexander v. Commonwealth, 105 Pa. 1; Commonwealth v.
Bradley, 16 Pa. Superior Ct. 561.

3. In Alexander v. Commonwealth, supra, it was declared
that it was not the intendment of the act of 1874, allowing ex-
ceptions in criminal cases, " that decisions which have always
rested in the sole discretion of the court where the cause was
tried should be made subject to exception and review." Among
the rulings therein expressly referred to by the court are, a re-
fusal to postpone the trial, and a refusal of an application for
an attachment for an absent witness. We do not say that in a
plain case of abuse of discretion the action of the court in such
matters might not be subject to review. Be that as it may, we
do not think such a case is presented by the third and fourth

assignment of errors, which relates to what took place in the hearing of the motion to quash. The defendants declared in their affidavit that they were prepared to prove their allegations, and asked leave to call their witnesses for that purpose. Leave was granted, and they entered upon the hearing without suggesting that they were not prepared. After they had examined the grand juror, they asked for an attachment for an absent witness who lived in another county. In such circumstances, the refusal to suspend the hearing of the preliminary motion, and thus delay the trial of the case, is not ground for reversal. See Commonwealth v. Dietrich, 7 Pa. Superior Ct. 515.

4. It is well settled in Pennsylvania, that although the uncorroborated testimony of an accomplice should be received with caution, yet there is no rule of law forbidding a conviction upon his evidence alone: Carroll v. Commonwealth, 84 Pa. 107; Kilrow v. Commonwealth, 89 Pa. 480; Ettinger v. Commonwealth, 98 Pa. 338; Cox v. Commonwealth, 125 Pa. 94. As was said in Ettinger v. Commonwealth, the principle which allows the testimony of an accomplice to go to the jury for their consideration necessarily involves the right to believe and act upon it. Hence, no error was committed in refusing the defendant's first point (fifth assignment) in which they asked the court not merely to advise, but to charge the jury to acquit. It is the duty of the court to admonish the jury of the danger of convicting upon the uncorroborated testimony of an accomplice, and it is common practice for the courts to advise them not to do so. But no set form of expression in which such admonition and advice must be given has been prescribed. In this case the defendants presented seven points, all of which were unequivocally affirmed, excepting the first, which for the reasons above given could not be affirmed. All of these points were well calculated to impress upon the jury the duty to exercise great care in weighing the testimony and to give to the defendants the benefit of every reasonable doubt, and the second was directed expressly to the caution that ought to be observed in accepting and acting on the uncorroborated testimony of an accomplice. It was as follows: "The evidence of Nicholson and Battles, who are self-confessed participators in the crime charged in this indictment, coming as it does from a polluted source,

should be received with great caution and closely and doubt-ingly examined by the jury." The trial judge did not stop with a merely perfunctory affirmance of the point, but emphat-ically reiterated the essential parts of it in his answer. After a very careful examination of the evidence, we see no reason to doubt that the jury gave due heed to the instructions. One of latest, if not the latest, utterances of the Supreme Court upon the subject is contained in the opinion of Chief Justice PAXSON in Cox v. Commonwealth, 125 Pa. 94 : " A jury may believe an uncorroborated accomplice, and if his testimony produces in their minds a conviction of the defendant's guilt, beyond a rea-sonable doubt, they may convict. If the testimony of the ac-complice, his manner of testifying, his appearance upon the witness stand, impress a jury with the truth of his statement, there is no inflexible rule of law which prevents a conviction. In such case it is for the trial judge who also heard the witness, noticed his manner and appearance upon the stand, and who can judge equally with the jury as to his credibility, to say whether he is satisfied with the verdict. If both the jury and the court are satisfied that he has told the truth, there is no reason why the verdict should not stand. If we lay down an inflexible rule in regard to corroboration, there may be instances when crimi-nals will escape although both jury and court are satisfied be-yond a reasonable doubt of their guilt." Here the defendants evidently appreciated the difficulty in the way of an affirmance of their first point and framed their second point to meet the contingency of a refusal of the former. Having obtained from the court the caution to the jury which they asked for, we are of opinion that they have no reason to complain that the court did not go further.

5. The chickens were stolen on a Saturday night in Janu-ary, 1900. According to the testimony of one of the accomplices, they were put in bags which were taken by Craig with the dec-laration that he would sell them on Monday. He testified fur-ther that on Monday afternoon Craig paid him part of the price he had received. In view of this testimony we cannot say that it would have been wholly irrelevant to show that Craig sold two bags of chickens early on a Monday morning in January, 1900. But the commonwealth failed to prove the fact alleged. Hence we cannot see that the overruling of the objection, which

is the subject of the sixth assignment, even if erroneous, harmed the defendant. The appellant must not only establish the existence of an error in the proceedings below, but that the error has tended to his injury. It is not sufficient, as a general rule, to show that an improper question, either in form or substance, had been put to a witness; it must appear that an answer was received which tended to injure the case of the appellant: Commonwealth v. Kay, 14 Pa. Superior Ct. 376. See also Philadelphia v. Reeder, 173 Pa. 281. It is very clear that no evidence was given by the witness, Fickes, which could by any possibility have harmed the defendants. The failure of the commonwealth to make good its offer would more probably operate with the jury in the defendants' favor. Moreover, no motion was made to strike it out, nor was the court asked to instruct the jury to disregard it, as might have been done upon the ground that it did not come up to the offer. See Commonwealth v. Bell, 166 Pa. 405. In any way that the assignment may be viewed, we think it should be overruled.

6. If the constable who made the information upon which the warrant was based had been called as a witness and had fixed the date of the larceny differently, the information might have been admissible in evidence to contradict him. But we are of opinion that it was not admissible, either on the part of the commonwealth or the defendants, as primary evidence, of the date of the larceny.

7. It is urged in support of the eighth and ninth assignments, that where, on cross-examination, a party denies the making of statements which tend to show his bias or interest, witnesses may be called by the opposing party to contradict him and thus affect his credibility with the jury. As was said in one of the cases cited by the appellants' counsel (Geary v. People, 22 Mich. 220), if the witness Nicholson had expectation of immunity depending on defendants' conviction, or on his giving testimony to incriminate them, it was proper that the jury should know it; and if satisfied on that point, they might not regard his testimony just as they would if no such interest existed. But, to say nothing of the vagueness of the offers, the manifest objection to them is that the statement denied by Nicholson and offered to be proved by the defendants was not in terms, or in effect, that he had been promised or expected immunity if he

testified against the defendants.    To be more explicit, the state-
ment that " he had been promised," by some unnamed person,
" to be left out at court," coupled with the statement, " that
he believed they were going back on him," would tend to show
that he had no expectation based on the promise that had been
made.    But aside from that, there is nothing in the statement
to show that his being " left out at court" was in any way de-
pendent upon the conviction of the defendants or the testimony
that he might give against them.    If, therefore, the testimony
had been admitted, it would not have shown that the witness
was affected by bias or interest; and it is well settled that in
order to impeach a witness by proof of contradictory statements
made by him, it is essential that such statements have reference
to some matter which is relevant and material to the issue on
trial.    The ruling in Hester v. Commonwealth, 85 Pa. 139, at
p. 157, fully sustains the ruling of the court below upon these
offers.

8.  It is legitimate cross-examination of an ordinary witness,
who has testified in chief that what purports to be his signa-
ture, was not written by him, to call upon him to write, in order
that such writing may be compared with the disputed writing
for the purpose of contradicting him.    The same must be true
in the case of a defendant in a criminal case who has offered
himself as a witness, unless, as has been suggested, he is at
liberty to stop at any point he chooses.    But this latter doc-
trine is contrary to the great weight of authority.    A defend-
ant in a criminal case cannot be compelled to testify, and un-
der our statute no inference can be drawn from, nor comment
be made on, his failure to do so.    But by consenting to take
the stand and swearing to tell the truth and the whole truth,
he waives his constitutional privilege, and may be cross-exam-
ined in the same manner as any other witness.    There is this
difference, however, between an ordinary witness, and a defend-
ant testifying in his own behalf; the former goes upon the
stand by compulsion, the latter voluntarily.    Having waived
his constitutional privilege to keep silent, he cannot give testi-
mony which makes in his favor, and then object to legitimate
cross-examination, upon the ground that his answers will crim-
inate him : Commonwealth v. House, 6 Pa. Superior Ct. 92, 108,
and cases there cited.    See also People v, Gardner, 28 L. R. A,

699, and notes. There was, therefore, no error in the ruling which is the subject of the tenth assignment.

9. The record does not show that the defendants were present when the verdict was rendered ; nor is it imperatively necessary in cases of this class that it should : Holmes v. Commonwealth, 25 Pa. 221. And as the depositions submitted in support of the motion in arrest of judgment are not part of the record, we might properly dismiss the eleventh assignment without further comment. It is not necessary, however, to put the decision on the technical ground. The question sought to be raised by the assignment was ruled in Lynch v. Commonwealth, 88 Pa. 189, where it was held, quoting the language of Chief Justice AGNEW, that " it cannot be doubted, even if arraignment be necessary as a fact in a trial for larceny, that mere voluntary absence at the rendition of the verdict, by one out on bail, who has appeared, and been tried regularly, is not a fatal error."

The judgment is affirmed and the record remitted to the court below to the end that the sentence be fully carried into effect.