# Commonwealth *v.* Donnelly, Appellant.

*Criminal law—Conspiracy—Corporations—Illegal dividends—Statute of limitations.*

1. The officers of a corporation may be convicted of conspiracy to declare illegal dividends, where it appears that during the period of the payment of such dividends, the expenses of the corporation were more than double the dividends paid, and that the total receipts from sales were less than the dividends, and that the latter were paid out of the sales of the stock of the company. Where the commonwealth alleges a continuing conspiracy, evidence of acts which might otherwise be barred by the statute of limitations is admissible as tending to show the scheme and plan of the alleged conspirators.

2. A conspiracy formed by certain persons may be considered as adopted by others who come into the transaction at a later stage of the performance.

3. On the trial of a conspiracy of the officers of two corporations to create a lease of the lands of one of the corporations to the other corporation at an exorbitant and excessive rate to the injury of the stockholders of the second corporation, a deed of the lands to the lessor company is admissible in evidence to show the value of the property. In such a case the consideration named in the deed is prima facie evidence of value, and in the absence of testimony showing the contrary, it may be presumed to represent the value of the property.

*Practice, C. P.—Trial—Evidence—Failure to follow up offer—Motion to strike out.*

4. Where in a criminal trial evidence is admitted upon condition that the commonwealth follows it up with certain other evidence, and the commonwealth fails to make good its offer, it is the duty of the defendant to move the court to strike out the evidence admitted, and withdraw it from the consideration of the jury. Where such a motion is not made, the objection to the testimony will be considered as waived.

*Criminal law—Conspiracy—Declarations—Coconspirators.*

5. To make the declarations of an alleged conspirator admissible in evidence against his coconspirators, there must be preliminary proof of the joint purpose and 'action, not necessarily conclusive, but sufficient to submit to the jury on that fact; and the declarations so admissible must have been made during the pendency of the conspiracy.

*Criminal law—Conspiracy—Improper remarks of district attorney—Comment on failure of defendants to testify—Pleading.*

6. Where on the trial of several defendants for conspiracy, the district

attorney says to the jury that only two of the defendants had taken the witness stand, and one of the defendants who was acquitted objects to the remark, and requests that a juror be withdrawn, and this request is refused and none of the other defendants make any such objection or request, the two defendants who went upon the stand and were convicted cannot, upon appeal, complain of the words of the district attorney, or of the action of the court in refusing to withdraw a juror and continue the case.

7. A prisoner convicted of conspiracy cannot after his conviction ask the court to strike off a plea of not guilty, on the ground that he had never entered such a plea, where the record shows that the prisoner with his counsel was present when, by direction of the court and without objection by anyone, the plea of not guilty was entered for all of the defendants present, and that the prisoner and his counsel remained in court and participated in the trial without raising any question as to the plea.

Argued April 19, 1909.   Appeal, No. 249, Oct. T., 1908, by defendants, from judgment of Q. S. Phila. Co., Feb. T., 1908, No. 288, on verdict of guilty in case of Commonwealth v. William A. Donnelly et al.   Before Rice, P. J., Porter, Henderson, Morrison, Orlady and Head, JJ.   Affirmed.

Indictment for conspiracy.   Before Wiltbank, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.

On a rule for a new trial Wiltbank, J., filed the following opinion:

This was an indictment for conspiracy.   Ten defendants appeared for trial.   Of these the bill was submitted as to four, to wit: William S. Darnell, Mahlon Van Booskirk, Howard W. Bush, Edmund S. Fritz; the jury found a verdict of not guilty as to C. A. Conrad and H. U. Hollenbach, and after presentation of the proofs and charge of the court the jury found guilty Paul Morris, William J. Darnell, M. W. Watkinson and H. H. Missimer.   Rules for a new trial were granted on the motion of Morris, Darnell, Watkinson and Missimer.

Three points were made at the argument of the rule for a new trial which merit consideration.

The first point which I shall take up is also involved in a rule taken by certain of the defendants to show cause why the verdict should not be set aside and the plea of guilty entered of record should not be struck off. This point is founded upon the contention that, although a plea of guilty has been entered by the court on the several bills of indictment and on the part of all of the defendants now before the court, yet in point of fact the plea was not made by all of them before the trial. This point, however, is not well taken. When the case was called, as there was a large number of counsel engaged, the several defendants were summoned by the crier, and notation made of their professional representatives. Thus with respect to each of them an appearance was duly entered. The district attorney then announced that, unless it was desired that each defendant should be arraigned, it would be considered that they pleaded not guilty. This suggestion was acceded to, and the plea of not guilty was accordingly entered by the court through the clerk and the trial proceeded. The trial judge reports this to be an account of what then happened. After thus proceeding to trial without objection, it is not competent for the defendants to avail themselves of a silence which they allege they maintained, in order that upon the failure of their defense to acquit them they might complain of a situation which they had produced.

The second point rested upon the ruling of the trial judge at the opening of the address of the district attorney.

The minutes of the trial show that at a stage of the summing up of the district attorney that officer said: " Only two of the defendants had taken the witness stand; that those who did merely repeated, in effect, their plea of not guilty, and that this was all of the defendants' case."

Whereupon C. A. Conrad by C. J. Hepburn, Esq., his attorney, moved the court that a juror be withdrawn.

This motion was made in behalf of the defendant Conrad, and was overruled by the court. An exception was asked for and refused. The defendant Conrad was acquitted.

It was not competent to withdraw a juror at the trial. Many defendants were involved, and each had his interest in desiring a verdict of acquittal, by which he should be exonerated from

the grave charge of conspiracy to defraud. As it resulted the defendant Conrad, in whose behalf the objection was made, was as has been stated himself acquitted, together with one other defendant; and accordingly, it is not to be considered that the objector was prejudiced before the jury by the expression of the district attorney.

No other plaintiff having excepted to the words referred to, it is not their privilege to secure a new trial on this ground: Com. v. Clark, 10 Pa. Dist. Rep. 641; Com. v. Dorman, 22 Pa. Superior Ct. 20.

An examination of the statement of the district attorney makes it clear that there was no reference to defendants other than the two who took the stand. As to these the language was that they had merely repeated, in effect, their plea of not guilty, and this was all of the defendants' case.

The third point presented on the argument for a new trial had relation to the instruction of the court, as follows:

You will find that new men from time to time have come into a relation with the United States Graphite Company, and that some of these are defendants here. Within the scope of this case it may be said that a conspiracy may, as it were, be made up of continuing acts. The original combination may advance to a combination for further action, thus giving life to a combination adapted to change in circumstances, or adapted to a new stage of the conspiracy reached in the development of the plan. In such a case a new impluse is given to the men engaged, and the continued action or new action necessitated by lapse of time in working out the original scheme, must be regarded as a consequence involved in the plan at the beginning, and therefore as anticipated by the actors, upon the principle that when they conspired they not only contemplated present action but prepared for new decisions for action in the future. Should a conspiracy of this continuing character be found by you as a fact in the case, you might, if the proofs justified it under this charge, find any defendant a party to it, even although he entered into a relation with the original offenders at some later stage of the case, when renewed action was unlawfully agreed upon by all of them. In other words, a man may adopt and

enter into a continuing conspiracy after its life has begun, and thus became a party to it and its consequences and liable to prosecution. Some of these defendants, it may be, appear to stand close to the transactions which were unlawful and which they deliberately inaugurated or advanced. This may not be your view of the situation, and you must follow your view. You will studiously examine what has been presented to you, with care in sifting the evidence, and with the intention to convict if the proofs require it, no matter what might follow, but with an equally urgent intention to acquit if that course is required of you under your oaths.

We do not discover error in this instruction. It is consistent with, and according to, the authorities as we find them.

It is to be noted at the outset, however, that the defendants found guilty were shown by the proofs to have been of the party creating the conspiracy in its origin. Paul Morris, William J. Donnelly, M. W. Watkinson and H. H. Missimer were active from the commencement of the scheme and in the formation of the combination at that time, which the jury has found to have been criminal.

In Com. v. Wishart and others, in this court, reported in 8 Legal Gazette, 137, there was an indictment for conspiracy, and among other defenses the statute of limitations was set up, In consideration of this point the trial judge—the present chief justice of Pennsylvania—instructed the jury in a manner regarded as a guide to us in our disposition of the case at bar. He said: "Now, as to the law relating to the statute of limitations. counsel claim that the substantive offense charged in this indictment is the agreement to do an unlawful act, and at the moment such agreement was made, the running of the act began, and that if the prosecution was not instituted for more than two years after such an agreement was formed, the defendants could not be convicted, no matter how guilty they might be. But I instruct you that the agreement is not the end of the offense, and that the statute does not begin to run until the end of the conspiracy. If an act in the conspiracy is shown, the presumption is that all subsequent acts based on it and in pursuance of the same plan, were done with the consent and par-

ticipation of the original conspirators.    No doubt a man may repent and retire from a conspiracy, but when it goes on from step to step, and there is no break and no new start, a connection shown at any point may be presumed to continue through the subsequent steps of the conspiracy."

The rule for a new trial is discharged.

*Errors assigned* were various rulings and instructions set forth in the opinion of the Superior Court.

*Horace L. Henderson*, with him *William T. Aldrich, Jr.*, and *Michael J. Ryan*, for appellant.—Evidence of the value of land must relate and be confined to the time of the transaction in controversy: Zerbe v. Miller, 16 Pa. 488.

The general and established rule is that recitals of consideration in a deed are no evidence whatever as against strangers, and even as to parties are of insignificant value, always being open to explanation and attack: Dean v. Connelly, 6 Pa. 239; Garwood v. Dennis, 4 Binney, 314; Lloyd v. Lynch, 28 Pa. 419; Depew v. Clark, 1 Phila. 432; Goodspeed v. Fuller, 46 Me. 141; Rose v. Taunton, 119 Mass. 99; Lake Roland El. Ry. Co. v. Frick, 86 Md. 259 (37 Atl. Repr. 650).

There was nothing in the evidence submitted by the commonwealth that met the condition undertaken by the district attorney to connect the evidence of the purchase by McLearn from McIntyre with the conspiracy charged in the indictment, and under the circumstances, it is submitted that it was the duty of the court, before submitting the case to the jury, and upon its own motion, to have stricken from the record all the evidence relating to that subject, and the failure to do so was reversible error: People v. Stephenson, 91 Hun, 613; Albert v. Miller, 7 W. N. C. 477; Jenkins v. State, 35 Fla. 737 (18 So. Repr. 182); Berford v. Sanner, 40 Pa. 9.

The refusal of the defendants' motion in arrest of judgment for remark of the district attorney to the jury, as set forth in the fourteenth assignment of error, is submitted as such error on the part of the court as to require a reversal and new trial: Com. v. Foley, 24 Pa. Superior Ct. 414; Com. v. Bell, 7 Pa. Dist.

Rep. 54; Com. v. Holtham, 5 Pa. Dist. Rep. 24; Com. v. Bruner, 1 Pa. Dist. Rep. 641; Wilson v. United States, 149 U. S. 60 (13 Sup. Ct. Repr. 765); Com. v. Scott, 123 Mass. 239.

*William A. Grey*, assistant district attorney, with him *John H. Maurer*, assistant district attorney, and *Samuel P. Rotan*, district attorney, for appellee.—The conspiracy was a continuing one, and evidence of acts, which might otherwise be barred by the statute of limitations, was admissible: Com. v. Bell, 166 Pa. 405; Com. v. Wishart, 8 Legal Gazette, 137.

The declarations and acts of any of the conspirators may be offered in evidence as against all: Com. v. Crossmire, 156 Pa. 304.

When a motion to strike out is not made, the objection to the testimony is considered as waived: United States v. Gardner, 42 Fed. Repr. 832; McCarney v. People, 83 N. Y. 408; Com. v. Zappe, 153 Pa. 498.

The defendant should not be permitted to contradict the record in the case, especially in view of the fact that the testimony taken in support of his rule to amend shows that the proceedings had with reference to the entry of the plea were regular: United States v. Molloy, 31 Fed. Repr. 19; Tarver v. State, 95 Ga. 222 (21 S. E. Repr. 381); Feriter v. State, 33 Ind. 283; Stewart v. State, 111 Ind. 554 (13 N. E. Repr. 59).

OPINION BY MORRISON, J., July 14, 1909:

This is an appeal of William A. Donnelly from a conviction and sentence on a charge of a conspiracy to cheat and defraud. The indictment charged two of the defendants, Darnell and Van Booskirk, as officers of two corporations, the Pennsylvania Graphite Company and the United States Graphite Company, and the remaining ten defendants (two of whom, Hess and Welsh, were not at the trial), as officers of the United States Graphite Company, of conspiring together to cheat and defraud the United States Graphite Company and its stockholders, by means of fraudulently procuring the incorporation, under the laws of the state of New Jersey, of the United States Graphite Company, and by means of procuring the leasing by the latter

company of certain land in Chester county, Pennsylvania, owned by the Pennsylvania Graphite Company, and the leasing of other land in the same county owned by H. H. Missimer, Paul Morris, Wm. A. Donnelly, H. W. Bush, Wm. S. Darnell, defendants, and one George C. Hollenbach, upon terms and for considerations that were excessive and exorbitant; and also by means of the falsification of the books of account of the United States Graphite Company, of making and publishing false statements and accounts of earnings, profits and financial condition of the latter company, and of causing unlawful dividends to be declared and paid upon the capital stock of the same company.

Upon the trial of the case, Darnell and Van Booskirk, the two defendants indicted as officers of both companies, and Bush, an officer of the United States Graphite Company, were discharged by reason of the court directing a verdict of not guilty as to them at the close of the commonwealth's case, and the same action was taken as to defendant Fritz at the close of defendant's case; the jury rendered a verdict of not guilty as to two defendants, Conrad and H. W. Hollenbach, and a verdict of guilty as to the remaining defendants, Morris, Donnelly, Missimer and Watkinson.

It is difficult for us to see how any disinterested person can carefully read the record and escape the conclusion that the appellant was guilty of a conspiracy to cheat and defraud. Therefore, his conviction ought to stand, unless reversible error appears in the record. In our opinion, the charge of the court below and his opinion refusing the appellant a new trial, indicate that the case was carefully tried and that the learned judge sought to guard the interests of the defendant so that he might not be illegally convicted.

Upon the question of declaring illegal dividends, the testimony shows that from October, 1904, until the failure of the United States Graphite Company, in August, 1906, the total dividends declared and paid amounted to $67,706.25; the total expenses during that time to $146,540.09, and the total sales to only $61,186.08, which was $85,354.01, less than the expenses to that date. During all this time the stock which was

held by the trustee was being sold at various prices and the money received therefrom used for the payment of dividends. If the evidence in regard to the payment of dividends, which was practically uncontradicted, was not sufficient to convict the defendants of palpable fraud and conspiracy, then it would be difficult to imagine what would be necessary to make out a case of conspiracy.

The first seven assignments of error relate to the overruling of objections to the admission of testimony, and in determining whether the learned court erred in this regard, it is well to recollect that the indictment charges a conspiracy to cheat and defraud. From the evidence we learn that the United States Graphite Company was organized on February 16, 1904. At that time the defendants took over 590,000 shares of stock of said company, out of a total number of 600,000 shares for certain leases which they transferred together with a lease to be acquired from the Pennsylvania Graphite Company. At that time the Pennsylvania Graphite Company did not own the land which was to be the subject of the lease and did not take title to the same until April 25, 1904. There was evidence to that effect, and it was contended that the defendants never took any steps to secure the lease which was to be acquired from the Pennsylvania Graphite Company and which was a part of the consideration of the transfer to them of the 590,000 shares of stock. Of this stock which the defendants received, they turned back to a trustee, for the purpose of sale, all but 125,340 shares, which they retained for their own purposes. It was not until June 20, 1904, that the United States Graphite Company secured the lease from the Pennsylvania Graphite Company, and this was as a result of negotiations conducted between the two companies.

The first three assignments of error relate to the admission of the deed from John P. McLearn to the Pennsylvania Graphite Company in evidence and the consideration for the transfer of the property. The fourth, fifth and sixth assignments of error relate to the admission of the deed from one S. Maxwell McIntyre to John P. McLearn, and the consideration therefor. The seventh assignment relates to the admission of the before-

mentioned deeds, the lease between the Pennsylvania Graphite Company and the United States Graphite Company, and the charter and the amended charter of the Pennsylvania Graphite Company.  On the part of the defendants, a general objection was made to the admission of these papers and the evidence with reference thereto, on the ground that they were immaterial and irrelevant and related to matters that occurred so long ago as to be barred by the statute of limitations.

The indictment was found on February 13, 1908.  The commonwealth alleged the first act in the conspiracy was the securing of title to the property by John P. McLearn on March 25, 1903, which was followed by the formation of the Pennsylvania Graphite Company on April 6, 1903, and thereafter by the formation of the United States Graphite Company on February 16, 1904; the lease of the property to the latter company on June 20, 1904, and the subsequent declarations of unlawful dividends and other acts, as the commonwealth contended was shown by the testimony, which continued until the fall of 1906. Here it is well to note that the appellant was a stockholder, treasurer and an active man in the United States Graphite Company.

In our opinion, the evidence and the papers admitted and complained of in said seven assignments of error were material and relevant for the purpose of showing the foundation and history of the entire transaction, and even if some of the things complained of occurred more than two years before the finding of the bill, they were not therefore necessarily incompetent. The commonwealth alleged a continuing conspiracy, and evidence of acts which might otherwise be barred by the statute of limitations was admissible as tending to show the scheme and plan of the alleged conspirators.  We think the principle is ruled by Com. v. Bell, 166 Pa. 405, and cases therein cited. But we have no doubt upon this question when we consider Com. v. Wishart, 8 Legal Gazette, 137, which was tried in Philadelphia by Chief Justice MITCHELL when he was on the common pleas bench.  That was a conspiracy case and the statute of limitations was set up and that learned judge said to the jury: "Now, as to the law relating to the statute of limi-

tations, counsel claim that the substantive offense charged in this indictment is the agreement to do an unlawful act and at the moment such agreement was made,. the running of the act began, and if the prosecution was not instituted for more than two years after such an agreement was formed, the defendants could not be convicted no matter how guilty they might be. But I instruct you that the agreement is not the end of the offense, and that the statute does not begin to run until the end of the conspiracy. If an act in the conspiracy is shown, the presumption is that all subsequent acts based on it and in pursuance of the same plan, were done with the consent and participation of the original conspirators. No doubt a man may repent and retire from a conspiracy. But when it goes on from step to step, and there is no break and no new start, a connection shown at any point may be presumed to continue through the subsequent steps of the conspiracy."

The jury evidently found that the appellant was actively connected with the conspiracy within two years of the finding of the bill of indictment, and we think there was sufficient evidence from which this could be found.

The title of the United States Graphite Company to the land in question was under a lease from the Pennsylvania Graphite Company, which was predicated upon the prior title of John P. McLearn. The consideration paid to McLearn by the Pennsylvania Graphite Company for the property was material and so was the consideration paid by McLearn to McIntyre. The appellant being a stockholder and an officer of the United States Graphite Company, can hardly be said to be a stranger to the title under which his company claimed. Undoubtedly the general rule is that a recital in a deed is not evidence except as against the party claiming under it. But the lease of the United States Graphite Company and the title of their lessors, the Pennsylvania Graphite Company, rested upon and arose out of the prior title to John P. McLearn.

The consideration named in a deed is prima facie evidence of the fair value of the property conveyed thereby, and in the absence of testimony showing the contrary it may be presumed to represent the value of the property: Britton v. Stanley, 4

Wharton, 113.   In the present case, under all of the evidence the value of the property was a question for the consideration of the jury.   If the prima facie showing of the commonwealth on this question was not correct, it could easily have been rebutted by the defendants.   The first seven assignments are overruled.

The eighth assignment is that the court erred in not striking from the record all the evidence relating to the purchase of land by John P. McLearn from McIntyre, following and conditioned upon the promise of the district attorney to follow it up with other evidence as set forth in the record.   But there was no motion made to strike out the evidence complained of in this assignment, and it has been frequently held that in such case it was the duty of the appellant to request the court to strike it out and withdraw it from the consideration of the jury: McCarney v. People, 83 N. Y. 408.   Where a motion to strike out is not made, the objection to the testimony is considered as waived: U. S. v. Gardner, 42 Fed. Repr. 832.

In Com. v. Craig, 19 Pa. Superior Ct. 81, President Judge RICE, speaking for the court (p. 96), said: "The failure of the commonwealth to make good its offer would more probably operate with the jury in the defendant's favor.   Moreover, no motion was made to strike it out, nor was the court asked to instruct the jury to disregard it, as might have been done on the ground that it did not come up to the offer."   The eighth assignment is overruled.

The ninth and tenth assignments complain that the court refused to discharge the appellant at the close of the commonwealth's case and also refused a binding instruction in his favor in the charge to the jury.   It is sufficient to say in regard to these assignments that the question of the appellant's guilt was for the jury, and we think it was carefully and fairly submitted to that body by the learned judge below.   The ninth and tenth assignments are not sustained.

The eleventh, twelfth and thirteenth assignments complain of the admission in evidence of a letter of Paul Morris & Company and of certain identified letters called market letters; of an article published in the "North American," a newspaper of Philadelphia.   In view of the appellant's active connection

with the alleged conspiracy and his official position in the United States Graphite Company and the evidence in the case relating to the subjects of these assignments, we think the court below did not err in admitting the evidence, and, therefore, we overrule the eleventh, twelfth and thirteenth assignments. There was evidence of conspiracy and confederation of the defendants who were found guilty by the jury. "To make the declarations of an alleged conspirator admissible in evidence against his co-conspirators, there must be preliminary proof of the joint purpose and action, not necessarily conclusive, but sufficient to submit to the jury on that fact; and the declarations so admissible must have been made during the pendency of the conspiracy:" Marshall v. Faddis, 199 Pa. 397; 1 Greenleaf on Ev., secs. 110, 111.

The fourteenth assignment complains that the district attorney said to the jury that only two of the defendants had taken the witness stand, to the prejudice of the defendants and against the statutes of the commonwealth of Pennsylvania made and in such cases provided. There is no merit in this assignment for two reasons. First: The appellant took the stand and testified in his own behalf and the district attorney had a right to comment on his testimony and it does not appear that he drew any inferences or made any improper remarks as to the other defendants who did not testify. He certainly had a right to call attention to the fact that two defendants had testified and to comment on their testimony. Second: Neither the defendant nor his counsel excepted to the alleged improper remark of the district attorney and the only way it was brought on the record was by an objection by Mr. Gillespie, counsel for C. A. Conrad (who was acquitted), and the court was requested to have the language of the district attorney taken down and that a juror be withdrawn. But the court refused the motion and declined to grant Mr. Gillespie an exception, and, therefore, the language of the district attorney does not properly appear in the record and we cannot review it. It does not appear that counsel for any other defendant asked to have this language brought upon the record nor did any other defendant secure an exception. The defendant had not exhausted his

remedy in the lower court, and if he were in a position to complain of the court for not granting him an exception, the way was open to him by securing and serving a special writ, setting forth the circumstances of the case, and commanding the judges, if they be true, to affix their seal: Drexel v. Mann, 6 W. & S. 386; Conrow v. Schloss, 55 Pa. 28. If the appellant made no objection to the language of the district attorney at the trial, took no exception and had no bill sealed, he is in no position to have the matter now reviewed: Com. v. Weber, 167 Pa. 153; Com. v. Dorman, 22 Pa. Superior Ct. 20. The fourteenth assignment is overruled.

The fifteenth assignment complains of the refusal of the court to amend the record by striking therefrom the appellant's plea of not guilty. There is no merit in this assignment. The record shows that the appellant, with his counsel, was present when, by direction of the court and without objection by anyone, the plea of not guilty was entered for all of the defendants present, and that the appellant and his counsel remained in court and participated in the trial, without raising any question as to the plea. The appellant took his chance of getting a verdict of not guilty, and then when disappointed in this respect, he urges that he never pleaded. This is an attempt to juggle with the records of a judicial trial in a manner that cannot be approved. The fifteenth assignment of error is overruled.

Judgment affirmed, and the record is remitted to the court below to the end that the appellant may be committed to serve the unexpired portion of his sentence, at the time this appeal was made a supersedeas.