## Commonwealth v. Lewis et al.

*John H. Dando,* for Commonwealth; *John H. Hibbard,* for defendants.

VALENTINE, J., April 4, 1934.—Defendant's counsel has stressed two reasons in support of the motion for a new trial.

(1) That the court erred in admitting in evidence the testimony of the defendant, Bert Lewis, taken in the proceedings to remove the Commissioners of Hanover Township, no. 287, June sessions, 1932; and (2) that the court erred in admitting in evidence the testimony relative to four payments made to the defendant, Lewis, for wages. These payments had been made on various dates beyond the period of the statute of limitations.

1. In support of the first reason, counsel urges that the admission in evidence of the testimony of Lewis given in the removal proceedings was in violation of article I, sec. 9, of the State Constitution, which provides that a person "cannot be compelled to give evidence against himself".

The gist of defendants' contention is that Lewis' testimony was not voluntarily given for the reason that, at the time of testifying, he was under duress.

In support of this contention, counsel has directed our attention to the case of United States v. Bell, 81 Fed. 830, decided by the Circuit Court for the Western District of Tennessee, in which the conclusion was reached that the testimony of a witness who had not been informed of his constitutional rights at the time of his examination by a special examiner could not be used against him in a later prosecution for false swearing.

Our attention has been called to no authority within this State holding that it is the duty of the judge to warn the witness of his constitutional privilege and that failure so to do renders the testimony of the witness inadmissible in a subsequent proceeding against him, on the theory that it was involuntarily given. The nearest approach to such authority appears to be the case of Ralph v. Brown, 3 W. & S. 395, decided 92 years ago, in which Chief Justice Gibson said, at page 400: "Though the Judge ought to advise the witness of his privilege, *(Southard v. Rexford, 6 Cow. 254)*, he cannot compel him to exercise it."

The constitutional prohibition is against a person being "compelled to give evidence against himself." "Voluntarily" is used as an antithesis of something done under compulsion. The Constitution confers upon every citizen the privilege of remaining silent wherever it reasonably appears that his testimony or declarations might result in self-incrimination.

Professor Wigmore, in his work on Evidence, states the following: "It is plausible to argue that the witness should be warned and notified, when a criminating fact is inquired about, that he has by law an option to refuse an answer; and this view was often insisted upon, a century ago, by the leaders at the Bar: But there are opposing considerations. In the first place, such a warning would be an anomaly; it is not given for any other privilege; witnesses are in other respects supposed to know their rights; and why not here? In the next place, it is not called for by principle, since, until the witness refuses, it can hardly be said that he is compelled to answer; nor is it material that he believes himself compelled, for the Court's action, and not the witness' state of mind, must be the test of compulsion. Again, the question can at any rate only be one of judicial propriety of conduct, for no one supposes that an answer given under such an erroneous belief should be struck out for lack of the warning. Finally, in practical convenience, there is no demand for such a rule; witnesses are usually well enough advised beforehand by counsel as to their rights when such issues impend, and judges are too much concerned with other responsibilities to be burdened with the prevision of individual witnesses' knowledge; the risk of their being in ignorance should fall rather upon the party summoning than the party opposing.

"Nevertheless, it is plain that the old practice was to give such a warning, when it appeared to be needed. But, as general knowledge spread among the masses, and the preparation for testimony became more thorough, this practice seems to have disappeared in England, so far at least as any general rule was concerned.

"In the United States both the rule and the trial custom vary in the different jurisdictions. No doubt a capable and painstaking judge will give the warning, where need appears; but there is no reason for letting a wholesome custom degenerate into a technical rule": 4 Wigmore on Evidence (2d ed.) 885, sec. 2269.

" 'The privilege is merely an option of refusal; not a prohibition of inquiry:' Wigmore, sec. 2268. If a privilege, it may be asserted or waived at the choice of him who possesses it": Commonwealth v. Bolger, 229 Pa. 597, 602.

While the record of the removal proceedings indicates that the witness Lewis, when recalled, had some difficulty in explaining the transactions concerning

which he testified, we think it apparent that he preferred to offer his explanations in the hope that they would be accepted, rather than to remain silent. The situation in which he then found himself was brought about by the fact that when first called he had freely testified concerning the matter inquired about but had not at that time told the truth. There is nothing contained in the record which tends to support the theory that the testimony then given was not voluntary. There was certainly no occasion for the presiding judge at that time to warn the witness of his rights; nor do we think the situation when the witness was recalled required such warning or that it indicates that the constitutional rights of the witness were then violated. Testimony which a witness is not compelled or commanded to give must be held to have been given voluntarily and not in violation of article I, sec. 9, of the State Constitution.

The prohibition is against compelling a person to give evidence. The most critical examination of the record in the removal proceedings does not justify the conclusion that the judge then presiding compelled the witness to make admissions of his guilt. We find no analogy between the present case and Commonwealth v. Smith, 185 Pa. 553, 569, in which the court joined with the district attorney in forcing an admission of guilt.

2. The indictment contains two counts. The first count charges that the defendants on July 5, 1929, conspired and agreed to cheat and defraud the Township of Hanover out of the sum of $56, lawful money of the United States, by "fraudulently, maliciously, corruptly and dishonestly procuring the payment of $56 as wages for Bert Lewis" to the prejudice, etc., of the township. The second count contains similar language and charges that the defendants, on July 19th, conspired to cheat the township of a similar sum. For reasons which we do not understand, the indictment contains no charge of a continuing or general conspiracy. On the trial, the Commonwealth was permitted to prove, under defendants' objection, that, prior to the dates laid in the indictment, four additional payments had been made to the defendant Lewis for wages as follows: March 28, 1929; April 12, 1929; April 26, 1929; and June 20, 1929, each in the sum of $54. Had the indictment contained a count charging a general or continuing conspiracy, the receipt of this evidence would have been proper: Commonwealth v. Bartilson et al., 85 Pa. 482; Commonwealth v. Donnelly, 40 Pa. Superior Ct. 116; Commonwealth v. Girardot, 107 Pa. Superior Ct. 274; as tending to establish a conspiracy of such character, but the making of the prior payments did not tend to prove that the defendants had been guilty of the specific charges laid in the indictment.

In Commonwealth v. Donnelly, supra, at page 125, the Superior Court said: "The commonwealth alleged a continuing conspiracy, and evidence of acts which might otherwise be barred by the statute of limitations was admissible as tending to show the scheme and plan of the alleged conspirators"; and in Commonwealth v. Girardot, supra, it was said that declarations of the parties to an alleged conspiracy made prior to the statutory period may be given in evidence providing they tend to show that the conspiracy existed at the time charged in the indictment.

Obviously, the fact that the three defendants conspired to procure payments to Lewis of sums which he had not earned, in April 1929, did not tend to establish that in July of the same year the defendants had entered into an entirely different conspiracy.

Motion allowed, and a new trial awarded.